# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM EDWARD BAKER : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ALPHA CONSOLIDATED HOLDINGS, INC. : <br> : <br> Defendant. : | C.A. No. 18-976-LPS-CJB |

Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Ronald C. Finley, Justin T. Beck, Remington A. Lenton-Young, BECK, BISMONTE & FINLEY LLP, San Jose, CA

    Attorneys for Plaintiff

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE

Clement J. Naples, Michelle L. Ernst, LATHAM & WATKINS LLP, New York, NY

Ron E. Shulman, LATHAM & WATKINS LLP, Menlo Park, CA

    Attorneys for Defendant

**MEMORANDUM OPINION**

November 12, 2019
Wilmington, Delaware

STARK, U.S. District Judge:

Plaintiff William Baker ("Plaintiff") filed suit against Defendant Alpha Consolidated Holdings, Inc. ("Defendant") on June 29, 2018, alleging infringement of U.S. Patent No. 9,889,961 (the "'961 patent"). (D.I. 1) The patent-in-suit relates to thread interruptions on bottle spouts for use in capless fuel systems.

Presently before the Court is the issue of claim construction. The parties completed briefing on July 17, 2019. (D.I. 49, 50, 54, 55) The Court held a claim construction hearing on September 13, 2019. (D.I. 74) ("Tr.")

I. **LEGAL STANDARDS**

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation and internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent "specification is always highly relevant to the

1

claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . . [b]ecause claim terms are normally used consistently throughout the patent." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"In some cases, . . . the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is

unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## I.   CONSTRUCTION OF DISPUTED TERMS

### A.   "thread interruption"[1]

| Plaintiff |
|---|
| Portion along a thread where the thread pattern is disrupted or diminished |
| **Defendant** |
| Portion along a thread pattern where the thread ceases |
| **Court** |
| Portion along a thread pattern where the thread pattern ceases, also including where the thread pattern is disrupted or diminished |

Plaintiff notes the dictionary definition of "interruption" is broad – capturing any sort of break in uniformity or continuity – and does not require total ceasure. (D.I. 49 at 4) Plaintiff argues that absent evidence of disclaimer or express lexicography, a patentee is entitled to the full scope of what it has claimed; so here, the claimed invention covers both a partial and complete interruption of the threads. (*Id.* at 5-6) Stated differently, a "thread interruption" need

---

[1] This term appears in claim 1 of the '961 patent.

4

not be totally devoid of threads, although the threads must be reduced or disrupted in some way. Defendant responds that the specification expressly requires that the threads "cease[]" at the interruption in order to create a "threadless path," and the claim should be so limited. (D.I. 50 at 4-5) During oral argument, the parties also disputed whether the "thread interruption" is limited to an area devoid of threads, or also includes a region where the threads taper to a threadless region. (Tr. at 18-21, 24-27) In the Court's view, the proper construction falls somewhere between the two parties' positions.

"The ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. The Background of the '961 patent describes the problem being solved: "the conventional thread pattern, which wraps around the entire perimeter of the bottle spout, can't properly address the function of a capless system's entry/exit point." '961 patent, col. 2, ll. 17-20. Thus, "depression tabs [in the capless system] need to abut and slide along *a planar surface* [on the bottle spout] in order to 'exit' the fuel door," as "depressed tabs get stuck on bumpy threads." *Id.* at col. 2, ll. 21-26 (emphasis added).

The patent then describes the crux of the invention: "the thread pattern should have between one and four, and preferably two, interruptions, thereby creating *threadless paths* leading substantially perpendicularly inward from the proximal end of the lip of the bottle." *Id.* at col. 2, ll. 55-59 (emphasis added). The patent states that, in one preferred embodiment, "threads 25 are *not continuous* around the perimeter of lip 18, but rather *periodically cease*, thereby creating thread interruption 30." *Id.* at col. 5, ll. 21-24 (emphasis added).

A POSA reading the entire patent would conclude that "thread interruptions" must include a region where the thread ceases entirely, consistent with Defendant's proposal. This is also consistent with the repeated recitations throughout the specification of "planar surface[s],"

5

"threadless paths," and "ceas[ing]" threads that define the interruption. The patent does not use terms of degree such as "partially interrupted" or "substantially threadless." (Tr. at 21) Nor does the patent address how much a thread need be diminished for it to work for its intended purpose of opening the capless fuel system or preventing stuck tabs.

While the thread interruption requires a region devoid of threads, it *may also include* a region of thread disruption (e.g., tapered or diminished threads) as it transitions to the threadless region. As Plaintiff points out, the patent's figures show threads that taper to a threadless region. (D.I. 49 at 11; D.I. 55 at 2, 4, 6; Tr. 15-16) While the specification is silent on this point (D.I. 54 at 9), and the figures are not drawn to scale and are difficult to discern (*id.* at 6), and the patent does not use reference number 32 ("threadless path") ('961 patent, col. 4 l. 52) to identify a tapered region in any of the figures upon which Plaintiff relies (D.I. 54 at 6; Tr. at 24-26), nevertheless the Court views the figures as valuable support for Plaintiff's view on this point. Several figures clearly demarcate the claimed 51° "threadless path" to include regions with a tapered thread, and identify that region with 30, the "thread interruption." *See* '961 patent, Figs. 12, 20, 28, col. 4 l. 51; *see also* Fig. 36 (showing reference plane creating diminished *and* ceasing threads, identified by reference number 30 – "thread interruption").

### B. "threadless path"[2]

| | |
|---|---|
| **Plaintiff** | |
| A region formed by thread interruptions through which a tab can pass without interference from the threads[3] | |
| **Defendant** | |
| A path without threads that passes through the threads | |
| **Court** | |
| A path that passes through the threads and must include a portion without threads, and also may include portions where the thread pattern is disrupted or diminished | |

Plaintiff argues, for many of the same reasons discussed above, that "threadless path" is not limited to a region completely devoid of threads. (D.I. 49 at 9-10) Plaintiff primarily relies on the fact that paths with diminished threads do not frustrate the invention's intended purpose of opening the capless fuel system. (*Id.*) Consistent with the Court's analysis in connection with the first term, the Court will adopt a construction in which the threadless path must include a region devoid of threads, but may also include other regions (i.e., regions of tapered, disrupted, or diminished threads).

### III. CONCLUSION

The Court will construe the disputed terms as explained above. An appropriate Order follows.

---

[2] This term appears in claims 1, 3, and 6 of the '961 patent.

[3] Plaintiff originally proposed in its briefing: "[a] region formed by thread interruptions permitting the proper operation of tabs during insertion and removal of the bottle." (D.I. 49 at 9) At oral argument, Plaintiff offered the modified version, shown above, which it characterizes as having "structural rather than functional language." (Tr. at 9)