IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM EDWARD BAKER,<br><br>Plaintiff,<br><br>v.<br><br>ALPHA CONSOLIDATED HOLDINGS, INC. and ILLINOIS TOOL WORKS INC. d/b/a GUMOUT,<br><br>Defendants. | C.A. No. 18-976-LPS |

## MEMORANDUM ORDER

WHEREAS, Plaintiff William Edward Baker sued Defendants Alpha Consolidated Holdings, Inc. and Illinois Tool Works Inc. d/b/a Gumout (together, "Defendants") for the alleged infringement of claims 1-5 of U.S. Patent No. 9,889,961 ("the '961 patent") (*see generally* D.I. 60);

WHEREAS, both sides moved for summary judgment and moved to exclude certain expert testimony (*see generally* D.I. 240, 244, 246);

WHEREAS, after having carefully considered the extensive briefing, declarations, and exhibits regarding the summary judgment and *Daubert* motions (*see generally* D.I. 241, 242, 243, 245, 247, 248, 259, 260, 261, 262, 263, 269, 270, 271, 272), the Court conducted a hearing on July 15, 2021 (*see generally* D.I. 308);

WHEREAS, after the hearing, the Court set a schedule for supplemental claim construction proceedings (*see* D.I. 305);

WHEREAS, the Court issued a supplemental claim construction opinion and

1

corresponding order on August 3, 2021 (*see generally* D.I. 315, 316);

WHEREAS, the Court subsequently permitted the parties to conduct additional expert discovery and to provide additional briefing on summary judgment and *Daubert* issues (*see* D.I. 320);

WHEREAS, Defendants filed a combined motion for summary judgment of noninfringement of the asserted claims and *Daubert* motion (D.I. 340);

WHEREAS, the Court has carefully considered the briefing and other materials regarding Defendants' motion (*see generally* D.I. 341, 342, 343, 346, 352), as well as the supplemental briefing and other materials regarding Baker's previously filed summary judgment and *Daubert* motions (*see generally* D.I. 338, 339, 347, 349, 350, 351);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment of noninfringement of the asserted claims (D.I. 340) is **GRANTED**, for the reasons and to the extent stated below.

1. Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). An assertion that a fact cannot be genuinely disputed (or, alternatively, is genuinely disputed) must be supported by citing "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court must draw all reasonable inferences in the nonmoving party's favor, and it may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

        2.        To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247-48 (emphasis omitted). A factual dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" supporting the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

3. All five asserted claims of the '961 patent contain the following limitation:

> wherein said neck is adapted so when inserting said bottle into said capless fuel system said two threadless paths align with said tabs such that said tabs are depressed along threadless paths and without impeding entry of said neck by said plurality of threads.

('961 patent at 7:29-33, 8:9-13) The Court construed this term to mean:

> wherein said neck is *configured or designed* so when inserting said bottle into said capless fuel system *said two threadless paths align with said tabs* such that *said tabs are depressed along threadless paths* without interfering with, slowing the progress of, or preventing entry of said neck by said plurality of threads.

(D.I. 315 at 4) (emphasis added)

4. In construing the "wherein said neck is adapted" term, the Court rejected Baker's suggestion that the neck need be only "capable of" having the threadless paths aligned with the tabs during insertion of the bottle into the capless fuel system. (*See id.* at 3-4) Instead, as the Court explained:

> The claim language is phrased in a way that contemplates *actual alignment* of the threadless paths with the tabs of the capless fuel system, *not merely the possibility of alignment*. The specification emphasizes that alignment of the threadless paths with the tabs is *crucial* for insertion of the bottle into the fuel system. (*See, e.g.*, '961 patent at 2:62-64) ("Access to the aperture of the capless system *requires* alignment of the tabs with the threadless path[s].") (emphasis added) The prosecution history provides further support for the Court's conclusion, as the patentee added the "wherein said neck is adapted" limitation to secure allowance of the claims by overcoming prior art that the Examiner understood as being "capable for use with a capless fuel system."

(D.I. 316 at 4) (additional emphasis added) In other words, the Court's construction *requires* the neck of the bottle to be configured such that *the threadless paths always align with and press the fuel system's tabs during insertion*. An accused product lacking this feature does not infringe.

4

4.  There is no genuine dispute that the accused products have necks that are *not* configured in the manner required by the Court's construction of the pertinent term, which is found in all asserted claims. The undisputed evidence shows that the threads of the accused products can be used to press the fuel system's tabs, which means that the threadless paths are *not* always used to press the tabs. (*E.g.*, D.I. 263-6 (2/10/21 Sand Report) ¶ 33) ("[T]he neck of the Accused Products is designed so that no alignment when inserting is necessary, and the entire outer perimeter of the neck functions to depress the tabs and allow entry into a capless fuel system. This means that no alignment is needed for insertion and the tabs may be depressed along either the threads or the clearance features of the Accused Products.") Baker's own technical expert, Dr. Kimmel, conceded that, based on his observations, "no alignment is needed when inserting the accused bottles into the capless fuel system assemblies." (D.I. 343-2 (5/17/21 Kimmel Dep. Tr.) at 126; *see also* D.I. 343-3 (8/12/21 Kimmel Report) ¶ 42 ("[T]he Accused Bottles are specifically configured and designed so that they work both with the threadless paths aligned *and with them not aligned*.") (emphasis added)) Indeed, Dr. Kimmel admitted that "it's possible for someone to use the accused products in a capless fuel system and *never* have the threadless paths align with the tabs during insertion." (D.I. 343-4 (8/26/21 Kimmel Dep. Tr.) at 26 (emphasis added); *see also id.* at 26-27) The labels of the accused products – which do not instruct users to align the bottles before insertion – further support this fact. (D.I. 263-6 (2/10/21 Sand Report) ¶ 41)

5.  Baker argues that the accused products meet the "wherein said neck is adapted" limitation, pointing to Dr. Kimmel's opinion that the accused products are "[r]easonably capable of use with a capless fuel system." (D.I. 343-4 (8/26/21 Kimmel Dep. Tr.) at 25-26; *see also*

D.I. 346 at 1-2, 7)  That opinion, however, contravenes the Court's construction.[1]  Indeed, during the supplemental claim construction proceedings, Baker proposed a construction that merely required the threadless paths to be capable of aligning with the tabs during insertion. (D.I. 311 at 2) (Baker's proposed construction: "wherein said neck is *capable of* inserting said bottle into said capless fuel system such that said two threadless paths are brought into line with said tabs such that said tabs are depressed along threadless paths and without interfering with or slowing the progress of entry of said neck by said plurality of threads") (additional emphasis omitted)  The Court rejected Baker's proposal.  (D.I. 315 at 4)  Given the Court's claim construction, and the undisputed evidence, no reasonable factfinder (even taking the evidence in the light most favorable to Baker) could find infringement.

6. Baker's other arguments for why the Court should deny summary judgment are wholly unpersuasive.  Baker suggests that the accused products meet the "wherein said neck is adapted" limitation because the bottles can perform the claimed function "without any modification."  (D.I. 346 at 1)  Again, Baker misapprehends the Court's claim construction.  In the accused products' one and only configuration (without any structural modifications) they undisputedly operate such that the threadless paths *may* align to press the tabs, but the Court's construction requires that the neck be configured such that the threadless paths *must* align to press the tabs.  As Defendants convincingly explain, the necks of the accused products "are 'configured or designed' to be inserted in any orientation, without alignment" (D.I. 352 at 1)

---

[1] To the extent that Baker might be inclined to somehow withdraw Dr. Kimmel's capability opinions (*see* D.I. 341 at 4), that would not defeat Defendant's motion for summary judgment, as the record would remain devoid of evidence from which a reasonable factfinder could find the "wherein said neck is adapted" limitation is met by the accused products.

(emphasis omitted), meaning they are *not* configured to always align during insertion.

7. Baker's cited cases are therefore inapposite. For example, Baker cites *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1363 (Fed. Cir. 2018), for the proposition that a product may still infringe even if it can sometimes be used in a noninfringing manner. (D.I. 346 at 2) In particular, Baker analogizes the accused products to the hypothetical car described in *Core Wireless*. Baker's cited proposition is irrelevant here, and the analogy is faulty. It is not just that the accused bottles can sometimes be used in a noninfringing manner; they never infringe because their necks are not adapted so that the threadless paths always align with the tabs during insertion. In terms of the car analogy from *Core Wireless*, the accused bottles do not, for example, have necks that could be moved into different positions where one position would require the threadless paths to always align with the tabs during insertion.

8. Finally, the Court's claim construction and summary judgment ruling have nothing to do with users' subjective intent when inserting the accused products into fuel systems, as Baker suggests. (*See id.*) The Court's construction focuses entirely on the physical structure of the accused products' necks, and the Court's ruling is based on the undisputed evidence regarding those necks.[2]

**IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than

---

[2] The Court need not, and does not, reach Defendants' alternative argument that, even under Baker's preferred interpretation of the "wherein said neck is adapted" limitation, summary judgment is warranted because Baker has not offered any evidence regarding specific instances of direct infringement. (D.I. 341 at 9-11 (citing *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984 (Fed. Cir. 2009); and *Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007)); D.I. 352 at 2-3)

**2:00 p.m. tomorrow, Saturday, September 18, 2021**, submit a joint status report regarding how this case should proceed. The parties shall serve a courtesy copy of this filing by email to chambers. In the report, the parties shall, at a minimum, provide their positions on: (i) whether the Court should cancel the jury trial scheduled to begin on September 27; (ii) whether, if the trial is not to be cancelled, the Court should convert the September 22 pretrial conference to a remote proceeding; and (iii) whether, if the trial is not to be cancelled, any of the pending motions, including the motions and disputes contained in the proposed pretrial order (D.I. 344), are moot and do not require judicial resolution.

September 17, 2021  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE